## JOSEPH P. STICKNEY *versus* SAMUEL DAVIS.

A testator gave to his wife two cows from his stock of cattle, to the eldest of his two sons " the remainder of his stock of cattle except one pair of yearling steers," and to the other son " one pair of yearling steers." At the time of making the will the testator had but one pair of yearling steers, and he had reason to expect a speedy termination of his life, and he did in fact die before the steers ceased to be yearlings. *Held*, that the bequest of the steers was a specific legacy.

Where the plaintiff suffered a pair of oxen belonging to him to be attached with cattle of a stranger, on a writ against the stranger, without giving the officer notice of his title, and after the lien by attachment had terminated and the oxen were separated from the other cattle, the officer seized them on an execution against the stranger, it was *held*, that the plaintiff might maintain trespass against the officer for such seizure, and this without any special notice that the oxen were his property, and without a previous demand.

TRESPASS for taking and carrying away a pair of oxen. The defendant was a deputy sheriff, and took the oxen on an execution against John Stickney, an elder brother of the plaintiff.

At the trial, before *Shaw* C. J., it appeared that in 1825 the plaintiff's father made his will, by which he gives to his wife the improvement of one third of his real estate (a farm) during her life, and also gives her " all his household furniture, likewise two cows from his stock of cattle." To his eldest son, John, he gives " the remainder of his stock of cattle, except one pair of yearling steers," and " all his remaining personal property, on condition that John pay all the testator's lawful debts," and gives him one half of his real estate, with the income of the whole (subject to the wife's third) until his other son, the plaintiff, shall be of age, and appoints John executor of the will. To the plaintiff, he gives " one pair of yearling steers," and one half of his real estate ; and directs that the plaintiff shall stay on the farm and assist John, and that John, as a remuneration for such service, shall support the plaintiff until he shall come of age.

The brothers continued to live together on the farm, and the cattle remained and were used on the farm. John assented to the legacy of the steers. At the time of making the will, and of the testator's decease, which took place soon after, the testator had one pair of yearling steers, which were the oxen in controversy.

The defendant contended that this legacy was general and not specific ; that it would be satisfied by the delivery of a pair of yearling steers, to be obtained by purchase or otherwise ; and that no property in the cattle vested in the legatee, until delivered by the executor in satisfaction of the legacy. But the chief justice instructed the jury, that as one pair of yearling steers was excepted out of the general bequest of stock to the eldest son, and not otherwise disposed of, and as a pair of yearling steers was given to the younger son, if they were satisfied on the evidence, that there was but one pair of cattle in the testator's stock, at the time of making the will and at the time of the testator's death, answering that description, the legacy must be deemed to be a specific bequest of that pair, and upon proof of the will and the assent of the executor, the property therein vested in the legatee.

There was evidence that the oxen were kept on the farm and used by the brothers in common, the plaintiff being still under age, until the autumn of 1830, when John failed and the stock on the farm generally was attached as his property ; that the oxen in question were then attached by the defendant on mesne process, on several writs, as John's, and with one other yoke of oxen and other stock ; that the plaintiff did not, at that time, claim these oxen as his own, or give notice to the officer of his property in them, and that he assisted in acting as keeper of the stock for several days ; that afterwards, by some arrangement between John, the creditors, and the officer, most of the stock was sold on mesne process, but the oxen in question were not then sold, nor was the attachment upon them followed up by a seizure on execution within thirty days, and in consequence thereof the attachments expired.

The defendant contended, that if the plaintiff permitted the oxen to be attached as John's, and with John's, on mesne process, himself acting as keeper thereof, that although the attachment was out by the expiration of thirty days from the judgment, so that the officer did not claim title under the attachment, and although this property had been separated from the other, yet that the officer, as against the plaintiff, had a good right, *primâ facie*, to seize this property on execution, and the plaintiff could not maintain an action of trespass

against him as a wrongdoer, without a previous special notice, designation, and demand of his property. But the jury were instructed, that the act of the plaintiff, in permitting the oxen to be attached as John's, without notice of his title, might be used, with other proof, as evidence of a transfer ; but if no transfer had in fact been made, and the oxen were in fact the property of the plaintiff, such act of his would not prevent him from maintaining an action of trespass, nor was it necessary for him to give notice previously to bringing such action ; and as to their having been attached on mesne process with other cattle of John, that if they had been separated at the time of the seizure on execution and were then taken alone, (of which there was evidence,) and if the plaintiff had then the property and the right of possession, he could maintain an action of trespass, without special notice to the officer that the oxen were his property, and without a previous demand.

To these directions the defendant excepted.

*Merrick, Torrey,* and *N. Wood,* for the defendant, cited to the point that the bequest of the steers was not a specific legacy, *Purse* v. *Snaplin,* 1 Atk. 414 ; *Innes* v. *Johnson,* 4 Ves. 569 ; *Kirby* v. *Potter,* 4 Ves. 750 ; 1 Roberts on Wills, 373 ; *White* v. *Winchester,* 6 Pick. 48 ; *Jeffreys* v. *Jeffreys,* 3 Atk. 120 ; and that a demand was necessary, in consequence of the oxen being mixed with the cattle belonging to the plaintiff's brother, *Bond* v. *Ward,* 7 Mass. R. 123.

*Washburn,* for the plaintiff.

The *Court* referred to *White* v. *Winchester,* 6 Pick. 48, as containing the general doctrine in regard to specific legacies, and said that under the circumstances of this case, the testator having but one pair of yearling steers, and these being excepted from the general bequest of his cattle, and although he knew their age would change, yet having reason to expect a speedy termination of his life, the legacy must be deemed to be specific ; that the property therefore in the steers was vested in the plaintiff, and the jury had found that he had not transferred them to his brother ; that the fact, that the plaintiff gave no notice of his claim when the oxen were attached, but acted as their keeper under the officer, did not conclude him from alleging them to be his property, after the attachme

*(margin: Stickney v. Davis.)*

*(margin: Oct. 2d)*

*(margin: Oct. 3d)*

Stickney
v
Davis.

had expired; that the taking subsequent to that event was wrongful, inasmuch as the principle of law respecting the mixture of goods was not applicable to property of this kind, and a demand previous to the bringing of the action was not necessary.

*Judgment on the verdict.*